CONRAD & CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10042, 18293, 19582.   Promulgated October 31, 1928.

*Hugh Satterlee, Esq.,* for the petitioner.

*M. N. Fisher, Esq.,* and *James L. Backstrom, Esq.,* for the respondent.

1334

1338

OPINION.

PHILLIPS: On November 1, 1917, the petitioner corporation took over the business theretofore conducted by S. S. Conrad and B. B. Conrad. This business had been founded about 1860 by D. Conrad, father of S. S. and B. B. Conrad. Just how or when they came into the business is not shown, but it does appear that after 1900 they were the owners. We are here concerned with the determination of the invested capital of the petitioner for the fiscal years ended February 28, 1919, to February 28, 1922, inclusive. The determination of the issue involves consideration of sections 326 and 331 of the Revenue Acts of 1918 and 1921, which are identical so far as concerns the parts we must consider. The material portions of those sections provide as follows:

SEC. 326. (a) That as used in this title the term "invested capital" for any year means (except as provided in subdivisions (b) and (c) of this section):

(1) Actual cash bona fide paid in for stock or shares;

(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus: * * *

(3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year;

    *       *       *       *       *       *       *

(5) Intangible property bona fide paid in for stock or shares on or after March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding at the beginning of the taxable year, whichever is lowest: *Provided,* That in no case shall the total amount included under paragraphs (4) and (5) exceed in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding at the beginning of the taxable year; but

    *       *       *       *       *       *       *

SEC. 331. In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: *Provided,* That if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for deprecia-

tion, impairment, betterment or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise on or after March 1, 1913, in computing the net income of such previous owner for purposes of taxation.

The previous owner of the business or property which changed ownership having been a partnership, the effect of section 331 was such that no asset acquired from the partnership may be taken by the corporation in computing its invested capital, at a greater value than its cost of acquisition to the previous owner with proper allowance for the elements specified in the concluding clauses of that section. It would appear to follow that if, as the respondent contends, the good will of the partnership cost the partners nothing, no amount may be taken into the invested capital of the petitioner for that asset. For the purposes of the discussion immediately following, we shall assume that the Commissioner is correct in his determination that the good will cost the partnership nothing.

In the instant case the Commissioner has computed the invested capital of the petitioner by taking the par value of its capital stock, adding thereto the surplus at the beginning of the respective years and deducting therefrom $155,019.78, the amount at which the good will of the predecessor partnership was set up on the books to offset the accounts payable which were assumed on organization. It is the contention of the petitioner that its stock was issued for tangible assets and that no part of its stock was issued for intangibles; that such intangibles were acquired for cash or its equivalent (assumption and payment of debts) and that its invested capital was improperly reduced by the amount paid for good will.

Ordinarily the acquisition of assets for cash or its equivalent would not change invested capital and it is upon the application of such a rule that petitioner must rely. We are of the opinion, however, that section 331 provides a contrary rule where such assets are acquired from those who own and continue to own a majority of the stock.

This petitioner issued its capital stock for tangible assets which had cost the partners $562,265.20 and which had a value of that amount at that time. Had this been the sole transaction there could be no doubt that the invested capital was $562,265.20. At the same time the petitioner paid out, or agreed to pay out of such assets, $155,019.78 for an intangible asset owned by the partnership which had cost the partnership nothing. It will be conceded, we believe, that if the petitioner had issued its capital stock for $562,-265.20 of tangible assets and had immediately distributed to the partners $155,019.78 in cash, the invested capital would have to be reduced by the amount of such distribution, whether or not any part of the stock issued was canceled. The definition of invested capital must necessarily contemplate that amounts which might

otherwise have been included in invested capital are to be reduced by amounts which are withdrawn by the stockholders. If the original invested capital is impaired by distributions to the stockholders, it must be reduced by reason thereof. If the law were otherwise, fictitious invested capital would be built up by large amounts paid in for stock, perhaps of no par value, or as paid-in surplus which would be immediately returned to the stockholders or used to purchase assets from the stockholders at an inflated price.

It makes no difference, for the purpose of computing invested capital, whether a corporation distributes a part of its capital assets to its stockholders and receives nothing therefor or whether it uses a part of such capital assets to acquire from its stockholders something which the statute says may not go into invested capital. Section 331 is not confined in its operation to property acquired for stock or even to property acquired by a corporation upon organization. It covers any change of ownership of property after March 3, 1917, where an interest or control in such property of 50 per centum or more remains in the same persons. It follows that whenever a corporation purchases assets from majority stockholders, such assets go into invested capital at not more than their cost to such stockholders, regardless of the amount at which the consideration paid might have gone into invested capital. We are of the opinion that the Commissioner correctly adjusted invested capital by excluding from the computation any value for the good will acquired from the partnership, if he is correct in holding that such good will had no cost.

The petitioner claims, in the alternative, that the good will had cost the partnership at least $155,019.78 and that it had a greater value when transferred to the corporation. It is not seriously contended that the good will value did not exist, the respondent placing his reliance upon the absence of any cost. Petitioner relies upon the amounts expended for advertising and the cost of its adjustment policy as establishing such cost. There is no showing whether the amounts expended for these purposes were deducted by the partners after March 1, 1913, in computing their net income for taxation. The books indicate that they were charged off to profit and loss on the firm's accounts and presumably they were deducted by the partners in computing taxable income. The brief of petitioner's counsel so assumed and in any event the burden was on it to establish the contrary. The question then is, how much of the expenditures made prior to March 1, 1913, for advertising and for adjusting the complaints of customers represents cost of the good will transferred in November, 1917? Petitioner urges that as a minimum cost it should include the amounts expended from 1900 to 1913 for so-called institutional advertising and the amounts expended from 1908 to 1913 for adjustment of complaints. It also seeks to include a part of the

amount spent for newspaper advertising. Recognizing that all such expenditures are in part designed to stimulate current sales and in part to build up good will, we know of no basis upon which a division may be made. We are satisfied that it did cost the previous owners a substantial amount to build up the good will which the business enjoyed in 1917, but we are also satisfied that the amount of such cost can not be determined. Sections 327 and 328 of the Revenue Act were designed to care for such cases. *Northwestern Yeast Co.*, 5 B. T. A. 232. The petitioner is entitled to a computation of its tax under section 328 of the statute, if any relief is afforded thereby. It is conceded that for the fiscal years 1921 and 1922, the application of section 328 would not reduce the tax. The first hearing having been limited to the trial of the issues specified in subdivisions (a) and (b) of Rule 62 of the Board, further proceedings as to years other than 1921 and 1922 will be in accordance with subdivision (c) of that rule.

Reviewed by the Board.

> *Decision will be entered for the respondent in Docket No. 19582. In Docket Nos. 10042 and 18293 further proceedings will be in accordance with Rule 62.*